UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SHARYL M., | ) | |
| | ) | |
| Plaintiff, | ) | No. 20-cv-0427 |
| | ) | |
| v. | ) | Magistrate Judge Susan E. Cox |
| | ) | |
| KILILO KIJAKAZI, Acting Commissioner | ) | |
| of the Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Plaintiff Sharyl M.[1] appeals the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for disability insurance benefits. The parties have filed cross motions for summary judgment.[2] As detailed below, Plaintiff's motion for summary judgment [dkt. 13] is GRANTED and Defendant's motion for summary judgment [dkt. 17] is DENIED. The ALJ's decision is reversed and remanded for proceedings consistent with this Memorandum Opinion and Order.

## 1.    SOCIAL SECURITY REGULATIONS AND STANDARD OF REVIEW

The Social Security Act requires all applicants to prove they are disabled as of their date last insured to be eligible for disability insurance benefits. 20 C.F.R. § 404.131; *Schloesser v. Berryhill*, 870 F.3d 712, 717 (7th Cir. 2017). The Court's scope of review here is limited to deciding whether the final decision of the Commissioner of Social Security is based upon substantial evidence and the proper legal criteria. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir.

---

[1]    In accordance with Northern District of Illinois Internal Operating Procedure 22, the Court refers to Plaintiff only by her first name and the first initial of her last name(s).

[2]    "Plaintiff's Memorandum in Support of Motion for Summary Judgment" has been construed as a motion for summary judgment by the Court.

2004). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation and signals omitted). The Court reviews the ALJ's decision directly, but plays an "extremely limited" role in that the Court may not "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or substitute (its) own judgment for that of the Commissioner." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021). Although the Court reviews the ALJ's decision deferentially, the ALJ must nevertheless "build an accurate and logical bridge" between the evidence and his conclusion. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (internal citation omitted). The Court cannot let the Commissioner's decision stand if the decision lacks sufficient evidentiary support, an adequate discussion of the issues, or is undermined by legal error. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *see also*, 42 U.S.C. § 405(g).

## 2.    BACKGROUND

### 2.1    Procedural History

In January 2016, Plaintiff protectively filed a Title II application for disability insurance benefits, alleging disability as of March 15, 2013. (Administrative Record ("R.") 23.) Plaintiff's applications were denied initially and upon reconsideration. *Id*. Plaintiff appealed those denials and requested an Administrative Hearing, which was scheduled for February 2018; that hearing was postponed due to a potential conflict of interest with the previously assigned Administrative Law Judge ("ALJ"), Patricia Supergan. (R. 23, 77-80.) The case was reassigned, and the Administrative Hearing was ultimately held before ALJ David Bruce on September 20, 2018. (R. 23, 41-74.) On January 24, 2019, ALJ Bruce issued an unfavorable decision, concluding that Plaintiff had not established she was disabled during the period from her onset date through her date last insured ("DLI"). (R. 23-31.) Plaintiff requested and was denied Appeals Council review

2

(R. 1-3), rendering the Decision of the Appeals Council the final decision of the Commissioner, reviewable by the District Court under 42 U.S.C. § 405(g). *See* 20 C.F.R. § 404.981; *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005). Plaintiff, through counsel, filed the instant action on January 20, 2020, seeking review of the Commissioner's decision. [Dkt. 1.] This matter was proceeding under the jurisdiction of the assigned District Judge until the parties consented to the undersigned assigned Magistrate Judge's jurisdiction on August 23, 2022. [Dkt. 22.]

## 2.2    The ALJ's Decision

On January 24, 2019, the ALJ issued his decision, which followed the familiar five-step sequential process for determining disability. (R. 23-31.) At Step 1, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. (R. 26.) At Step 2, the ALJ found Plaintiff had the severe impairments of degenerative disc disease, hypothyroidism, disfunction of major joints, asthma, and arthritis. *Id*. At Step 3, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments of 20 C.F.R. Part 404, Subpart P, App'x 1. *Id*. Before Step 4, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work with the following exceptions: lifting/carrying 20 pounds occasionally and 10 pounds frequently; sitting for six hours in an 8-hour workday and stand/walk for two hours in an 8-hour workday; frequent handling and fingering with the right upper extremity; occasional climbing of ramps and stairs; no climbing of ladders, ropes, or scaffolds; occasional balancing, stooping, kneeling, crouching, and crawling; and no concentrated exposure to dust, odors, gases, fumes, and pulmonary irritants. *Id*. At Step 4, the ALJ found Plaintiff capable of performing her past relevant work as a Legal Secretary. (R. 30.) This obviated the need for the ALJ to make a Step 5 finding. Because of these determinations, the ALJ found Plaintiff not disabled under the Act from her alleged onset date through her DLI. (R. 30-31.)

3.    **DISCUSSION**

Plaintiff raises three issues with the ALJ's opinion: (1) that the ALJ used a potentially erroneous DLI when assessing Plaintiff's disability claims; (2) that the ALJ inappropriately assessed Plaintiff's subjective statements; and (3) that the RFC fails to account for all of Plaintiff's limitations. The Court disagrees there was reversible error on the first two points. However, the Court finds the ALJ failed to build a logical bridge between the evidence and his conclusion when formulating Plaintiff's RFC, and it is on this basis the Court must remand the ALJ's decision.

**3.1    The ALJ Assessed Plaintiff's Claims Using the Correct DLI**

Plaintiff alleges the ALJ inadequately discussed whether her date last insured was correct. The Court disagrees, and finds this issue to be a red herring.

At the Administrative Hearing, the ALJ questioned whether Plaintiff's DLI of December 31, 2014 was correct. (R. 42.) The ALJ determined he would run a new earnings query to see if the date last insured had changed. (R 67.) The day after the hearing the ALJ did, in fact, run that query and it showed the December 31, 2014 DLI was correct. (R. 280-281.)

Plaintiff, however, posits she might have been insured longer, without any conclusive evidence of the same, and faults the ALJ for not following up with the issue of the correct DLI. Plaintiff's argument is unavailing. For starters, the ALJ *did* conduct a follow-up inquiry concerning Plaintiff's DLI when he ordered the new earnings query, which informed the ALJ he had been using the correct DLI.

For Plaintiff to have been insured at any particular point in time, she needed to "have at least 20 [Quarters of Coverage] in the 40-quarter period…ending with that quarter." 20 C.F.R. § 404.130(b). That is, to be insured on any particular date, for the 10 years (*i.e.*, 40 quarters) immediately preceding that date, the claimant must have earned enough to be covered for at least 5 of those years (*i.e.*, had 20 quarters of coverage). This rule is commonly referred to as the 20/40

rule. For as long as an individual meets the 20/40 rule, that individual has insured status; if such an individual develops an impairment that precludes the performance of all work before that status expires, the individual can receive disability insurance benefits. See 20 C.F.R. § 404.131. When determining whether an individual is covered for Title II purposes, the Commissioner's records are generally conclusive. *See* 42 U.S.C. §§ 405(c)(3), (c)(4)(C).

Here, the records ordered by the ALJ show that even if Plaintiff had four quarters of coverage in 2018 and in 2017 (which she did not), at the end of 2018 she only would have had 16 quarters of coverage, not the required 20.[3] (R. 281.) That is, Plaintiff would only have had Quarters of Coverage in 2018 and 2017 (putatively), 2014, and 2013, but none in 2016, 2015, 2012, 2011, 2010, and 2009. (R. 281.) The last time Plaintiff actually had 20 quarters of coverage in a 10-year period was in 2014 (comprised of 2005, 2006, 2007, 2013, 2014). In short, the last time Plaintiff met the 20/40 rule was December 31, 2014.

Thus, there was no error here in the December 31, 2014 DLI the ALJ used to assess Plaintiff's claims. The ALJ need not have addressed any other potential dates last insured because they were not, in fact, the DLI applicable to Plaintiff's claim.; no amount of discussion by the ALJ would have changed Plaintiff's DLI. The Court will not remand on this basis.

### 3.2    The ALJ Appropriately Assessed Plaintiff's Subjective Statements

Plaintiff next complains the ALJ failed to properly evaluate her subjective statements, specifically as they relate to her pain. The Court disagrees.

An ALJ's assessment of a plaintiff's subjective statements of symptoms need not be flawless and is entitled to deference unless it is "patently wrong," which is a "high burden." *Curvin*

---

[3]    In reading the Certified Earning Records in this case (R. 280-281), there is a column labeled "QC" which represents the Quarters of Coverage. The data under that column consists of a line of four spaces, with each space referring to the first, second, third and last quarters of each year ("YR"). A "C" is put in a space if there was coverage and an "N" if there was not. *See* dkt. 18, n. 5.

*v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015); *Turner v. Astrue*, 390 F. App'x 581, 587 (7th Cir. 2010). Only when an ALJ's assessment lacks *any* explanation or support will a court declare it to be 'patently wrong.' *Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008).

First, the ALJ's decision details that the ALJ was aware of Plaintiff's allegations of widespread pain. The ALJ noted how Plaintiff claimed her pain symptoms interfered with her ability to work. (R. 27.) The ALJ also noted that Plaintiff claimed she especially has pain and numbness in her hands and feet. *Id*. The ALJ documented Plaintiff's complaints of residual low back pain symptoms since she broke her coccyx in 2012. *Id*. Finally, the ALJ mentioned that Plaintiff complained of arthritis and twice noted her complaints of joint pain symptoms. (R. 28-29.) The ALJ took these allegations into consideration when he restricted Plaintiff to light work with limited handling and fingering with her right arm as well as a number of additional restrictions. (R. 26.) Ultimately, however, given Plaintiff's records, "the majority of which are from well after the date last insured," the ALJ found that Plaintiff was not as limited as she alleged. (R. 29.)

Nor did the ALJ disregard any pain allegation "simply because it is not fully corroborated by objective medical evidence," as Plaintiff alleges. [Dkt. 13, p. 9.] Rather, the ALJ considered the whole host of evidence, including the non-objective evidence of Plaintiff's activities of daily living as well and the opinions of the state agency doctors who reviewed plaintiff's records.[4] (R. 29-30.) Plaintiff's arguments that the ALJ discounted her allegations she was unable to do any work because of arthritis or fatigue simply because she had "a 'normal head' examination in February 2014," or because of "normal eye and ear examinations" ignores the realities of the ALJ's analysis. For instance, Plaintiff alleged fatigue from hypothyroidism. (R. 44.) While the ALJ noted

---

[4]    Neither Plaintiff's self-reports of pain while engaging in activities of daily living nor the opinions of medical providers count as objective evidence. *Thorps v. Astrue*, 873 F. Supp. 2d 995, 1005 (N.D. Ill. 2012)*; see, also,* 20 C.F.R. § 404.1529(2).

normal head, eye, and ear exams, he also importantly noted that "in December 2012, an ultrasound thyroid study compared with previous studies from November 2011 and February 2008 showed no significant changes," and that "[i]n January 2014, an ultrasound thyroid study compared with the claimant's previous December 2012 study showed no significant changes." (R. 28 (ALJ's citations omitted).) Similarly, when considering Plaintiff's arthritis, the ALJ documented that "in February 2013, x-rays of the claimant's right hand showed very mild arthritic changes with mild soft tissue swelling of the right middle finger and no acute bony abnormalities." *Id*. (ALJ's citations omitted). The ALJ did not simply discount these allegations of specific pain; he explained how objective medical evidence contradicted them.

He did the same with respect to Plaintiff's activities of daily living. The ALJ noted that Plaintiff reported she had been able to work part-time as a receptionist and then as a storage rental clerk; drive a car; handle her personal care; handle her medications; attend doctor appointments; help take care of her two children and her four dogs; go camping, prepare simple meals; perform indoor and outdoor chores; and shop via phone or computer. (R. 27, 29.) The ALJ did not then impermissibly leap from these activities of daily living to a conclusion that Plaintiff could work, but instead the ALJ properly used these reported activities to assess Plaintiff's credibility concerning the intensity, persistence, or limiting effects of her symptoms. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). The ALJ concluded that Plaintiff's statements concerning her impairments and their alleged impact on her functional capacity were inconsistent with the record in light of, among other things, her activities of daily living. (R. 29.) The Court will not disturb this conclusion.

In sum, the ALJ provided multiple valid reasons for discounting Plaintiff's allegations. The ALJ's discussion of the evidence adequately highlighted the ways in which Plaintiff's assertions varied from the evidence. The ALJ's assessment of Plaintiff's symptoms and accompanying

reasoning is well-supported and adequate to support the resulting conclusions (*i.e.*, supported by substantial evidence). *Barnett*, 381 F.3d at 668. The Court is sufficiently able to assess how the ALJ evaluated Plaintiff's symptoms, as required by SSR 16-3p. Moreover, Plaintiff has not demonstrated the ALJ's observations were wrong or that they lacked any explanation or support. *Elder*, 529 F.3d at 413-14. The Court cannot simply reweigh the evidence as Plaintiff would like, as this type of resolution of competing arguments and evidence is the purview of the ALJ. *Clifford*, 227 F.3d at 869; *Donahue v. Barnhart*, 279 F.3d 442, 444 (7th Cir. 2002). The Court finds the ALJ reasonably evaluated Plaintiff's subjective symptoms.

Additionally, the Court does not find the ALJ's reliance on "fairly stable" findings to be misguided. To wit, the ALJ noted that despite having severe impairments, Plaintiff's radiographic and other studies had demonstrated that her overall condition had remained "fairly stable" over time. (R. 27.) In support of this statement, the ALJ noted various imaging results that either were unremarkable, showed no significant changes, or displayed mild or (in a few cases) mild to moderate changes. (R. 28.) Moreover, the ALJ compared findings from before Plaintiff's alleged onset date with imaging from after that date. (R. 27-28.) The ALJ also highlighted how Plaintiff's examinations had generally been within acceptable limits throughout the record, including during and outside of the relevant period from the alleged onset date through the date last insured. (R. 28-29.) The Court agrees with the Commissioner that the ALJ's analysis of these "fairly stable" findings supports the ALJ's conclusion that the record failed to demonstrate work-preclusive symptoms, as is a Plaintiff's burden to demonstrate. *See Bowen v. Yuckert*, 482 U.S. 137, 146, n.5 (1987) (it is plaintiff's burden to prove disabling symptoms – not ALJ's burden to disprove them). As the ALJ recognized in his ultimate conclusion, the "fairly stable" findings show that throughout the course of Plaintiff's treatment, while her symptoms were severe enough to affect her ability to work (*i.e.*, restrict her functionality), they were not severe enough to preclude her ability to work

(*i.e.*, mandate a finding of disability).

### 3.3 The ALJ's RCF Assessment Lacks the Requisite Logical Bridge

Lastly, Plaintiff complains the ALJ erred in his Residual Functional Capacity assessment. The Court agrees.

Residual Functional Capacity is defined as the most one can do despite one's impairments. 20 C.F.R. §§ 404.1545, 416.945. Under Social Security Ruling 96-8p, an ALJ's assessment must "[c]ontain a thorough discussion and analysis of the objective medical and other evidence...and set forth a logical explanation of the effects of the symptoms…on the individual's ability to work." SSR 96-8p. Specifically, despite deferential review by the Court, the ALJ must nevertheless "build an accurate and logical bridge" between the evidence and his conclusion. *Steele*, 290 F.3d at 941. The Court cannot let the Commissioner's decision stand if the decision lacks sufficient evidentiary support, an adequate discussion of the issues, or is undermined by legal error. *Lopez*, 336 F.3d at 539; 42 U.S.C. § 405(g).

In making his RFC determination, the ALJ discounted the opinions in the record from the state agency consultants as those consultants indicated there was insufficient evidence to evaluate Plaintiff's claim prior to her DLI in December 2014; instead the ALJ "relied on the overall record, including the claimant's testimony at the hearing, and the additional medical evidence received at the hearing level." (R. 29.) The ALJ then noted Plaintiff's complaints of pain and limitations resulting therefrom, and how Plaintiff felt they interfered with her ability to work. The ALJ contrasted these reports of limitation with the fact Plaintiff reported she was able to work part-time as a receptionist and then as a manager of a storage rental facility, and engage in activities such as driving a car, handling her personal care, handling her medications, attending doctor appointments, helping take care of her two children and four dogs, and going camping. (R. 27.) The ALJ then referenced the fact that Plaintiff's examinations were generally within acceptable limits throughout

her medical record, and that Plaintiff remained within these acceptable limits over time (*i.e.*, objective medical examinations do not show any worsening of her condition). (R. 26-27, 29.) After engaging in this calculus, the ALJ restricted Plaintiff to light work with the aforementioned exceptions. However, the ALJ's discussion is devoid of adequate explanation for several of these limitations.

Take for example the ALJ's limitation that Plaintiff could only sit for six hours in an 8-hour workday and stand/walk for 2 hours in an 8-hour workday. The ALJ noted Plaintiff broke her coccyx in 2012 and has residual low back pain symptoms since that time, and acknowledged Plaintiff's claims she could not "sit, stand, and walk for prolonged periods of time."[5] (The ALJ did not, however, specify that Plaintiff could not "sit for more than 10, 15 minutes" at a time. (R. 52).[6]) This is the extent of the evidence the ALJ discussed when crafting the sitting limitation within the RFC, yet this evidence tells the Court nothing about how the ALJ determined sitting for six hours or that standing/walking for two hours would be the most Plaintiff could do despite her impairments. 20 C.F.R. §§ 404.1545, 416.945. It appears this accommodation was crafted from whole cloth, as it is unsupported by medical evidence or testimony. *See Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 450 (2d Cir. 2012) (citing *Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002) (evidence cannot be substantial if it is 'conjured out of whole cloth.'")). An ALJ cannot ascribe an RFC to a claimant that is unsupported by the medical evidence. *Garcia v. Colvin*, 741 F.3d 758, 762 (7th Cir. 2013) ("No evidence supports this []conclusion. No physician testified - no medical records revealed - that [the claimant] has the [RFC] ascribed to him by the [ALJ]");

---

[5]    The ALJ neglected to note Plaintiff was also diagnosed with and treated for sciatica, which is associated with lower back pain. (R. 573-74, 998, 1000.)

[6]    *See Johnson v. Colvin*, 2016 WL 3075341, at *7 (N.D. Ill. June 1, 2016) (remand based in part that "[a]lthough the ALJ noted that she based her RFC assessment on the Claimant's own assertions, she failed to explain how she found that Claimant could sit for forty-five minutes when Claimant asserted she could sit no more than twenty minutes, or how a one to two minute standing option was sufficient for Claimant.")

*see also Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016) (ALJ cannot make conclusions without evidence). An ALJ also cannot substitute an evidentiary gap with speculation. *See White ex rel. Smith v. Apfel*, 167 F.3d 369, 375 (7th Cir. 1999). It was speculation for the ALJ to have decided that sitting for six hours in an 8-hour workday and stand/walk for two hours in an 8-hour workday accommodated Plaintiff's reported problems with sitting.

Similarly, the ALJ limited Plaintiff to frequent (*i.e.*, between one-third to two-thirds of the day per SSR 83-10) handling and fingering with her right hand. As an explanation for this finding, the ALJ noted that February 2013 x-rays of Plaintiff's right hand showed mild arthritic changes with mild soft tissue swelling of the right middle finger and no acute bony abnormalities, and that December 2015 x-rays of Plaintiff's right thumb from showed sub-acute to chronic changes at the base of the first distal phalanx and some mild osteoarthritic changes. (R. 28.)[7] Just like the RFC sitting limitation, the limitation of one-third to two-thirds handling/fingering per day appears to have no obvious link to the two medical records cited by the ALJ; there is no logical bridge from the ALJ's recitation of those two test results to the conclusion that Plaintiff would be able to handle/finger items for over five hours in a workday.

Simply, the ALJ failed to explain the basis for the percentage of the workday the Plaintiff could engage in given tasks within the RFC. This leads to a decision where the Court cannot trace the ALJ's path of reasoning from the evidence to his conclusion. The Court remands on this basis.

## 4.    CONCLUSION

For the reasons detailed above, the Court must reverse and remand for proceedings

---

[7]    The ALJ neglected to mention any of Plaintiff's subjective complaints about her handling and fingering abilities, which included a reduced typing ability from 60 to 10 words per minute (which certainly calls into question the ALJ's conclusion Plaintiff could perform her past relevant work as a Legal Secretary (R. 30)); trouble gripping writing implements; and using paper plates and cups at home because she is afraid of dropping glassware. (R. 52, 61.) The ALJ also failed to discuss Plaintiff's short 3-week stint in physical therapy for her thumbs after which she stopped attending because she could not afford it. (R. 54.)

consistent with this Memorandum Opinion and Order. Plaintiff's motion for summary judgment

[dkt. 13] is GRANTED and Defendant's motion for summary judgment [dkt. 17] is DENIED.


**ENTERED: September 14, 2022**

_____

Susan E. Cox,
United States Magistrate Judge